IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

MESHA LEEPER, BETTY BARTON and
CECILY YOUNG, individually and o/b/o a
class of similarly situated persons                                                                PLAINTIFFS

v.                                          Case No. 6:20-cv-06119

ALTICE USA, INC., d/b/a SUDDENLINK
COMMUNICATIONS                                                                                      DEFENDANT

**ORDER**

Before the Court is Defendant's Renewed Motion to Compel Individual, Non-Class Arbitration and to Stay Pending Completion of Arbitration Proceedings. ECF No. 44. Plaintiffs filed a response. ECF No. 46. Defendant filed a reply. ECF No. 51.

**I. BACKGROUND**

Plaintiffs, Mesha Leeper, Betty Barton, and Cecily Young, have internet and television service with Defendant Suddenlink ("Suddenlink"), a subsidiary of Altice USA, Inc., located in Long Island, New York. Suddenlink provides broadband communications and video services to subscribers in several states, including Arkansas. Plaintiffs and all Suddenlink customers pay for the cost of service a month in advance. In March of 2020, the Governor of Arkansas and the President of the United States each issued emergency orders addressing the Covid-19 pandemic. Plaintiffs assert that since the emergency orders took effect, Suddenlink customers have been faced with increasingly high costs and declining levels of service. On August 31, 2020, Plaintiffs brought a class action against Suddenlink in the civil division of the Circuit Court of Clark County, Arkansas. *See* ECF No. 2, p. 1. On October 13, 2020, Suddenlink removed the case to this Court pursuant to 28 U.S.C. § 1453. ECF No. 2. On October 19, 2020, Defendant filed a Motion to Compel Individual, Non-Class Arbitration and to Stay Pending Completion of Arbitration

Proceedings, asserting that Plaintiffs agreed to the terms of Suddenlink's Residential Service Agreement ("RSA"), including its arbitration provision ("Arbitration Provision"), when they paid their monthly bills.[1]  ECF No. 7.  The Arbitration Provision provides, in relevant part, as follows:

> 24. **Binding Arbitration. <u>Please read this section carefully. It affects your rights.</u>**
>
> Any and all disputes arising between You and Suddenlink, including its respective parents, subsidiaries, affiliates, officers, directors, employees, agents, predecessors, and successors, shall be resolved by binding arbitration on an individual basis in accordance with this arbitration provision.  This agreement to arbitrate is intended to be broadly interpreted.  It includes, but is not limited to:
>
> - Claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory;
>
> - Claims that arose before this or any prior Agreement,
>
> - Claims that may arise after the termination of this Agreement.
>
> Notwithstanding the foregoing, either You or Suddenlink may bring claims in small claims court in Your jurisdiction, if that court has jurisdiction over the parties and the action and the claim complies with the prohibitions on class, representative, and private attorney general proceedings and non-individualized relief discussed below.  You may also bring issues to the attention of federal, state, and local executive or administrative agencies.
>
> Resolving Your dispute with Suddenlink through arbitration means You will have a fair hearing before a neutral arbitrator instead of in a court before a judge or jury.  **YOU AGREE THAT BY ENTERING INTO THIS AGREEMENT, YOU AND SUDDENLINK EACH WAIVE THE RIGHT TO A TRIAL BY JURY AND THE RIGHT TO PARTICIPATE IN A CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL ACTION.**
>
> . . . .
>
> g. <u>Waiver of Class and Representative Actions.</u>  **YOU AGREE TO ARBITRATE YOUR DISPUTE AND TO DO SO ON AN INDIVIDUAL BASIS; CLASS, REPRESENTATIVE, AND PRIVATE ATTORNEY GENERAL ARBITRATIONS AND ACTIONS ARE NOT PERMITTED.**  You and

---

[1] These bills clearly stated that payment constituted acceptance of the RSA's terms and provided a link through which Plaintiffs could view the terms before making payment.  *See* ECF No. 45-1 ("Payment of your bill confirms your acceptance of the Residential Services Agreement, viewable at suddenlink.com/terms-policy.").

> Suddenlink agree that each party may bring claims against the other only in Your or its individual capacity and may not participate as a class member or serve as a named plaintiff in any purported class, representative, or private attorney general proceeding.

ECF No. 45-1, pp. 3-5, 146-47.  On March 23, 2021, Plaintiffs filed a Response in Opposition to Defendant's Motion to Compel Arbitration arguing the RSA lacked mutual agreement and mutual obligation, both of which are necessary to enforce an agreement under Arkansas law of contract formation, thus, Plaintiffs should not be forced into arbitration.  ECF No. 22.

On December 14, 2022, the Court issued an order identifying the salient legal question at the heart of the parties' dispute as follows:

> Where no signed, written agreement exists between the parties, is an arbitration clause valid and enforceable against a party who receives notice of such terms by reference to a website on an invoice?

ECF No. 38, p. 1.  Further, the Order stayed this case pending the development and potential resolution of the issue of arbitrability in parallel state-court.  *Id.* at 2.  The Court denied without prejudice Suddenlink's previously pending motions to Compel Arbitration (ECF No. 7) and to Dismiss (ECF No. 9), as well as Plaintiffs' Motion to Certify (ECF No. 27).  *Id.* at 2-3.

On March 1, 2023, the Arkansas Court of Appeals issued decisions in five pending appeals regarding the enforceability of the Arbitration Provision in Suddenlink's RSA.  *Altice USA, Inc. v. Johnson*, 2023 Ark. App. 120, 661 S.W.3d 707; *Altice USA, Inc. v. Peterson*, 2023 Ark. App. 116, 661 S.W.3d 699; *Altice USA, Inc. v. Francis*, 2023 Ark. App. 17, 2023 WL 2290719; *Altice USA, Inc. v. Campbell*, 2023 Ark. App. 123, 661 S.W.3d 720; *Altice USA, Inc. v. Runyan*, 2023 Ark. App. 124, 662 S.W.3d 247.  In those cases, the Arkansas Court of Appeals reversed the trial court's denial of Suddenlink's motion to compel arbitration and enforced the Arbitration Provision in Suddenlink's RSA.  *See, e.g.*, *Johnson*, 661 S.W.3d at 17-18 ("The circuit court erred when it denied Suddenlink's motion to compel arbitration. [Plaintiff]'s payment of the invoices that she

received from Suddenlink, which directed her to the RSA available on Suddenlink's website, manifested her assent to its terms, and the arbitration provision otherwise appears in writing on Suddenlink's website and is supported by mutuality of obligation."). The Plaintiffs in each of the five cases sought review from the Supreme Court of Arkansas, and on June 22, 2023, the Supreme Court of Arkansas denied their petitions. Thus, the Arkansas Court of Appeals' orders are now final, and mandates have been issued.

On August 22, 2023, the Court filed an order lifting the stay. ECF No. 43. On September 7, 2023, Suddenlink filed a Renewed Motion to Compel Individual, Non-Class Arbitration and to Stay Pending Completion of Arbitration Proceedings and a memorandum in support arguing that its Renewed Motion should be granted following the Arkansas Court of Appeals' rulings. ECF No. 44. On September 21, 2023, Plaintiffs filed a Response in Opposition arguing that the Court should not follow the recent Arkansas Court of Appeals decisions, but instead should follow the rationale in an out-of-circuit district court decision applying West Virginia law—*Gooch v. Cebridge Acquisition LLC*, No. 2:22-CV-00184, 2023 WL 415984 (S.D.W. Va. Jan. 25, 2023). ECF No. 46. Further, Plaintiffs point to *Seale et al. v. Altice USA, Inc. et al.*, Docket No. MER-L-618-23, Superior Court of the State of New Jersey, Mercer County, where, in a separate lawsuit, Suddenlink agreed to a proposed class action settlement. *Id.* Plaintiffs assert that this contradicts Suddenlink's earlier statements that it and its customers are required to arbitrate all disputes between them. *Id.*; *and see* ECF No. 51-1. Thus, Plaintiffs argue that Suddenlink has (1) committed a fraud on the Court, (2) waived its right to seek arbitration, (3) breached the implied duty of good faith, and (4) is judicially estopped from seeking to compel arbitration. ECF No. 46, p. 3. Suddenlink has since filed a Reply in Support of its Renewed Motion to Compel Arbitration and two notices of supplemental authority. ECF No. 51, 48, 49.

4

## II.  DISCUSSION

Pursuant to the FAA, a written arbitration provision in any contract evidencing a transaction involving interstate commerce "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "A court must grant a motion to compel arbitration if a valid arbitration clause exists which encompasses the dispute between the parties."  *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1198 (8th Cir. 2008). "Federal substantive law of arbitrability governs whether the litigants' dispute falls within the scope of the arbitration agreement."  *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009).  Courts are guided by a "liberal federal policy favoring arbitration agreements."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).

In the context of the FAA, the Supreme Court has interpreted the term "involving commerce" as the functional equivalent of the more familiar term "affecting commerce"—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power.  *Allied-Bruce Terminix.*, 513 U.S. 265, 273-274 (1995).  "Because the statute provides for the enforcement of arbitration agreements within the full reach of the Commerce Clause . . . the FAA encompasses a wider range of transactions than those actually 'in commerce.'"  *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (cleaned up).

Here, the Court finds that the RSA is clearly in writing and is a contract evidencing a transaction involving interstate commerce.  ECF No. 45-1; ECF No. 4, p. 1 ("The Plaintiffs are adult residents of Clark County, Arkansas who have services with Suddenlink," and Suddenlink is a subsidiary of Altice USA, Inc., which "is one of the largest broadband communications and video services providers in the United States, delivering broadband, pay television, telephone services, proprietary content and advertising services to approximately 4.9 million Residential and Business

5

customers across 21 states."); *see Johnson*, 661 S.W.3d at 12 (Suddenlink's "RSA[, containing the Arbitration Provision,] was a written agreement in compliance with the FAA."). Accordingly, the Court concludes that the FAA governs the RSA.

Even under the FAA, the "validity of [an] arbitration agreement is determined by state contract law," to the extent that it does not conflict with the FAA. *E.E.O.C. v. Woodmen of World Life Ins. Soc.*, 479 F.3d 561, 565 (8th Cir. 2007); *and see Kindred Nursing Centers Ltd. P'ship v. Clark*, 581 U.S. 246, 252-53 (2017). "In Arkansas, the essential elements of a contract are: (1) competent parties; (2) subject matter; (3) consideration; (4) mutual agreement; and (5) mutual obligations." *Jorja Trading, Inc. v. Willis*, 2020 Ark. 133, 598 S.W.3d 1, 5.

As discussed above, the Arkansas Court of Appeals provided clear guidance on the enforceability of the Arbitration Provision in Suddenlink's RSA considering the five essential elements of contract formation in Arkansas. *See, e.g., Johnson*, 661 S.W.3d at 7. The Court agrees with the Arkansas Court of Appeals' finding that the Arbitration Provision is enforceable.

Here, the first three essential elements—competent parties, subject matter, and consideration—are easily met and the parties do not dispute otherwise. *See Lillian H. Ashton Tr. v. Caraway*, 370 S.W.3d 278, 282 (Ark. Ct. App. 2009) ("There is a presumption of law that every person is sane, fully competent, and capable of understanding the nature and effect of her contracts."); *Freeman Holdings of Arkansas, LLC v. FNBC Bancorp, Inc.*, 574 S.W.3d 181, 185 (Ark. Ct. App. 2019), *reh'g denied* (Apr. 24, 2019) ("Terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy."); *Ponder v. McCain*, 598 S.W.3d 560, 562 (Ark. Ct. App. 2020) ("Consideration is any benefit conferred or agreed to be conferred upon the promisor to which he is not lawfully entitled, or any prejudice suffered or agreed to be suffered by promisor, other than that which he is lawfully

bound to suffer."). The Court turns to the two remaining elements—mutual agreement and mutual obligations.

### A. Mutual Agreement

In Plaintiffs' Response to Suddenlink's Renewed Motion to Compel, "Plaintiffs incorporate its arguments in Response to [Suddenlink's] original motion to compel [ECF No. 22], as if fully set forth herein." ECF No. 46, n. 1. In their Response, Plaintiffs argue that the "Court must deny the Motion to Compel because there was no Mutual Agreement to the" RSA. ECF No. 22, p. 4.

"[I]t is well settled that in order to make a contract there must be a meeting of the minds as to all terms[.]" *Alltel Corp. v. Sumner*, 360 Ark. 573, 576, 203 S.W.3d 77, 80 (2005). That is, "both parties must manifest assent to the particular terms of the contract." *Id.* "A party's manifestation of assent to a contract is judged objectively and may be proved by circumstantial evidence." *Childs v. Adams*, 322 Ark. 424, 433, 909 S.W.2d 641, 645 (1995) (internal citation omitted). A "party's manifestation of assent to a contract may be made wholly by spoken words or by conduct." *Id.* "[I]n Arkansas, parties may become bound by the terms of the contract even if they do not sign it, if their assent is otherwise indicated, such as by the acceptance of benefits under the contract or by the acceptance of the other's performance." *Asbury Auto. Grp., Inc. v. McCain*, 2013 Ark. App. 338, at 6, 2013 WL 2285373. However, for a party to assent to a contract, "the terms of the contract, including an arbitration agreement, must be effectively communicated." *Erwin-Keith, Inc. v. Stewart*, 2018 Ark. App. 147, at 10, 546 S.W.3d 508, 512.

The Court of Appeals' decisions in *Johnson, Francis, Peterson, Campbell,* and *Runyan* all found that the element of mutual assent was satisfied. In *Johnson*, the Arkansas Court of Appeals found that the plaintiff "manifested her assent to the terms of the RSA—including its arbitration

provision—when she paid her monthly invoices." *Johnson*, 661 S.W.3d at 10. The Arkansas Court of Appeals further found that mutual assent was satisfied regardless of the RSA's merger clause. *Id.* at 10-11 (rejecting the plaintiff's argument that the invoices "were not competent evidence of assent because they were not included among the documents that the RSA's merger clause declared to be the 'entire agreement' between Suddenlink and the subscriber" and finding that "Suddenlink did not offer the invoices and payment records to vary the terms of the RSA but to show that [the plaintiff] assented to them in the first instance."). Likewise, the Court concludes that when Plaintiffs paid their monthly invoices, they manifested their assent to the terms of the RSA, including the Arbitration Provision. Thus, the Court finds that the element of mutual agreement is satisfied.

### B. Mutual Obligation

Plaintiffs additionally argue that the "Court must deny the Motion to Compel because there was no Mutual Obligation in the" RSA. ECF No. 22, p. 6. Plaintiffs assert that "Suddenlink can pick *ala carte* what provisions to enforce." *Id.* at 7.

"Mutuality of obligations means an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; thus, neither party is bound unless both are bound." *Jorja Trading*, 2020 Ark. 133, at 4, 598 S.W.3d at 5 (internal quotation marks omitted). "It requires that the terms of the agreement impose real liability upon both parties." *Id.* "[A] contract that provides one party the option not to perform his promise would not be binding on the other." *Id.*

The Arkansas Court of Appeals' decisions in *Johnson, Francis, Peterson, Campbell,* and *Runyan* also found that the RSA did not lack mutuality of obligation. In *Johnson*, the Arkansas Court of Appeals found that the plaintiff's "challenges to mutuality of obligation in the RSA, which

went to the validity of the agreement as a whole, were outside the scope of the circuit court's review and, therefore, could not serve as a basis to deny the motion compelling arbitration." *Johnson*, 661 S.W.3d at 14. Further, the Court of Appeals observed that the RSA "allow[ed] both Suddenlink and the subscriber to file their disputes in small claims court in appropriate cases, and each must otherwise submit to arbitration." *Johnson*, 661 S.W.3d at 15. The Court similarly rejects Plaintiffs' argument that the RSA lacks mutuality of obligations. Thus, the Court finds that Plaintiffs' payment of the monthly billing statements, coupled with the RSA satisfy the essential elements of a valid and enforceable contract.

### C. Out-of-Circuit Cases

Plaintiffs additionally point to two cases, *Gooch* and *Seale*, from other jurisdictions where Suddenlink unsuccessfully attempted to compel arbitration. The Court does not find either of these cases to be persuasive or relevant.[2] *Gooch* does not even represent the majority view of its own state. *See Frashuer v. Altice USA, Inc.*, NO. 2:21-CV-17, 2023 WL 195523, at *1 (N.D. W. Va. Jan 17, 2023) (applying West Virginia law and granting Defendant's motion to compel arbitration) (motion for reconsideration pending); *Citizens Telecomm. Co. of W. Va. V. Sheridan*, 239 W. Va. 67, 799 S.E.2d 144 (W. Va. 2017) (finding that terms and conditions referenced in a billing statement and made available on a website amounted to an enforceable contract). Further, *Seale* was a settlement agreement that does not have any bearing on Suddenlink's Arbitration Provision. *See* ECF No. 51-1. Plaintiffs argue that because Suddenlink entered into a settlement agreement in *Seale*, "Suddenlink has waived it right to seek arbitration." ECF No. 46, p. 2-4. This argument is "absurd" and "would amount to a rule that a party to millions of arbitration agreements has no

---

[2] Neither the Arkansas Court of Appeals nor the Arkansas Supreme Court found *Gooch* persuasive when denying the appellants' petitions for rehearing and review in *Johnson*, *Peterson*, *Francis*, *Campbell*, and *Runyan*. *See Johnson*, 661 S.W.3d 707; *Peterson*, 661 S.W.3d 699; *Francis*, 2023 WL 2290719; *Campbell*, 661 S.W.3d 720; *Runyan*, 662 S.W.3d 247.

choice but to arbitrate all claims arising from those agreements if even a single settlement has occurred in a case." *Bischoff v. DIRECTV, Inc.*, 180 F. Supp. 2d 1097, 1183 (C.D. Cal. 2002) (holding that a defendant's class-action settlement in another case did not affect the defendant's ability to "assert its right to compel arbitration."); *accord Chun Ping Turng v. Guaranteed Rate*, 371 F. Supp. 3d 610, 620 (N.D. Cal. 2019) ("Plaintiff fails to point the Court to any cases in which allegedly inconsistent conduct in a separate case involving a different party can waive the right to arbitrate."); s*ee also, e.g., Lemus v. CMH Homes, Inc.*, 798 F. Supp. 2d 853, 859 (S.D. Tex. 2011) (noting the plaintiff's "unsuccessful argument for waiver based on Defendants' decision to litigate rather than arbitrate in a different case involving different parties."); ECF No. 48-1.

In conclusion, the Court finds that the Arbitration Provision is enforceable under the FAA. Thus, Plaintiffs should be compelled to arbitrate their disputes with Suddenlink in accordance with the Arbitration Provision.

### III. CONCLUSION

For the reasons stated above, Defendant's Renewed Motion to Compel Individual, Non-Class Arbitration and to Stay Pending Completion of Arbitration Proceedings (ECF No. 44) is hereby **GRANTED**. The parties are directed to submit to arbitration in accordance with the terms of the Arbitration Provision in the RSA. This case is hereby **STAYED** and **ADMINISTRATIVELY TERMINATED** pursuant to 9 U.S.C. § 3, without prejudice to the right of the parties to reopen the proceedings to enforce the arbitrator's decision.

**IT IS SO ORDERED**, this 22nd day of March, 2024.

/s/ Susan O. Hickey  
Susan O. Hickey  
Chief United States District Judge